UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| LORETTA SABRINA MARSHALL, Individually and on behalf of all others similarly situated, <br><br> Plaintiff, <br><br> v. <br><br> GEORGETOWN MEMORIAL HOSPITAL d/b/a TIDELANDS HEALTH, <br><br> Defendant. | Case No.: 2:21-CV-02733-RMG-JDA |

### DEFENDANT'S MEMORANDUM IN SUPPORT OF ITS MOTION TO STAY LITIGATION AND COMPEL ARBITRATION OR, ALTERNATIVELY, TO DISMISS AND MOTION TO DISMISS ALL CLASS CLAIMS

Defendant Georgetown Memorial Hospital d/b/a Tidelands Health ("Tidelands" or "Defendant") submits this Memorandum in Support of its Motion to Stay Litigation and Compel Arbitration or, Alternatively, to Dismiss on the basis of the written, mutual mandatory arbitration agreement Plaintiff signed on or about April 12, 2016, in conjunction with submitting her Employment Application ("Application"), thereby agreeing to submit to arbitration any and all claims arising out of that application process. In the alternative, this Court should dismiss the Complaint in its entirety, as all of Plaintiff's claims are subject to mandatory arbitration under the parties' agreement.

Defendant also seeks to dismiss all of Plaintiff's class action claims, as the written arbitration agreement signed by Plaintiff contained a written waiver of class claims, thereby

precluding Plaintiff from bringing a class action lawsuit against Tidelands related to her Application and/or the application process.

I. **INTRODUCTION**

Despite her agreement to arbitrate disputes or disagreements arising out of the process of applying for work with Tidelands, Plaintiff Loretta Sabrina Marshall improperly brought this employment-related lawsuit against Tidelands in this Court. Plaintiff's claims revolve exclusively around the employment application process (specifically, Defendant's use of its Physical Agility Test (PAT) to evaluate the ability of an applicant to perform the essential duties of the job). Plaintiff filled out an online Employment Application with Tidelands in 2016, and she updated that Application as necessary over the next four (4) years (Traver Decl., ¶¶ 7-8) [1]. That Application form contains a mandatory and mutually-binding arbitration provision. Pursuant to the written agreement that was a part of her application process, Plaintiff and Tidelands mutually agreed:

> [T]o resolve any and all claims, disputes or controversies arising out of or relating to your application for employment and application process exclusively by arbitration to be administered by the American Arbitration Association ("AAA") pursuant to its Rules for the resolution of employment disputes….Some, but not all, of the types of claims covered are: discrimination or harassment on the basis of race, sex, age, national origin, religion, disability, genetic information, or any other unlawful basis; breach of contract; unlawful retaliation; employment-related tort claims such as defamation or negligence….

(see App., p. 3).

---

[1] The Declaration of Angela Traver is included as Exhibit 1 to Defendant's Motion and is cited as "Traver Decl." followed by the applicable paragraph number(s) throughout this Memorandum. Plaintiff's Employment Application is included as Exhibit A to the Declaration of Angela Traver and is cited as "App." followed by the applicable page number(s) throughout this Memorandum.

Plaintiff signed this agreement on April 12, 2016, when she submitted her online Application, and that Application was updated, online, by Plaintiff over the next four (4) years, as she continually applied to various jobs at Tidelands (see Traver Decl., ¶ 8).  Even though Plaintiff signed this written arbitration agreement in 2016, she is attempting to pursue those claims covered by the mandatory arbitration provision in this Court by way of her Complaint filed on August 24, 2021.

The dispute resolution process contained in the Application signed by Plaintiff is a binding and enforceable agreement under well-established authority that favors submission of disputes to alternative dispute resolution (including binding arbitration). As the Supreme Court has repeatedly confirmed, the Federal Arbitration Act ("FAA") reflects "a liberal federal policy favoring arbitration agreement" requiring courts to enforce arbitration agreements according to their terms, especially when the parties seek to "achieve streamlined proceedings and expeditious results." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011) (citations omitted); *see also Epic Systems Corp. v. Lewis*, 584 U.S. __, __, 138 S.Ct. 1612, 1621, 200 L.E. 2d 889 (2018).

The arbitration agreement in this case is governed by the FAA, and the claims asserted in this matter are covered by the arbitration provision in the Application.  Because the arbitration provision constitutes the exclusive and mutually agreed upon and binding method for Tidelands and Plaintiff to resolve all disputes between them arising from the Application and the application process, Plaintiff must be compelled to pursue her claims through arbitration.  Accordingly, Tidelands respectfully requests that the Court grant this Motion, stay all litigation relating to Plaintiff's claims, and compel Plaintiff to comply with the mandatory arbitration agreement between the parties.  Alternatively, Tidelands requests that the Court dismiss the Complaint, in its entirety, as all of Plaintiff's claims are subject to mandatory arbitration under the Employment Application.

Defendant also asks that all of Plaintiff's class action claims be dismissed pursuant to the class waiver contained in the Application.

II.     **STATEMENT OF THE CASE AND RELEVANT FACTS**

On or about April 12, 2016, Plaintiff signed and submitted her Employment Application that contained the arbitration provision cited above (Traver Decl., ¶ 6). The Application sets forth a detailed arbitration provision whereby both parties expressly agreed to arbitrate any and all "claims, disputes or controversies arising out of or relating to your application or application process exclusively by arbitration…" (Traver Decl., ¶ 7; App., p. 3). Plaintiff updated this Application online each time she asked to be considered for a job in 2016, 2019, and 2020 (Traver Decl., ¶ 8). Indeed, the Application signed by Plaintiff in 2016 containing the mandatory arbitration provision was forwarded to the respective hiring managers each time Plaintiff indicated an interest in any position at Tidelands (Traver Decl., ¶ 8).

The arbitration provision in the Application that Plaintiff signed on April 12, 2016, also contains a class/collective action waiver, which states as follows:

> [T]he arbitrator shall not have the authority to consolidate the claims of other applicants and/or employees into a single proceeding, to fashion a proceeding as a class, collective or representative action, or to award relief to a class or group of applicants and/or employees. All claims covered by this agreement are intended to be brought and resolved on an individual basis.

(Traver Decl., ¶ 9; App., p. 3).

Plaintiff filed this action in this Court on August 24, 2021, and served Tidelands on August 30, 2021 (see Entry No. 1). The arbitration provision outlined in the Application Plaintiff signed is valid, enforceable, and clearly encompasses the claims asserted in Plaintiff's Complaint.[2] Based

---

[2] Tidelands denies the material allegations of the Complaint, and further denies any and all alleged liability to Plaintiff.

-4-

on Plaintiff's assent to mutual arbitration pursuant to the language in her Employment Application, Tidelands now moves this Court to stay litigation and compel Plaintiff to arbitrate the claims she has asserted in this action or, alternatively, to dismiss Plaintiff's claims against Tidelands in their entirety. Defendant also asks that all of Plaintiff's class claims be dismissed pursuant to the enforceable class action waiver contained in the Application and signed by Plaintiff.

## III. APPLICABLE STANDARDS

### A. Arbitration is favored and mandatory.

Congress enacted the FAA to reverse the longstanding "judicial hostility to arbitration" and to place arbitration on the same footing as other contracts. *CompuCredit Corp. v. Greenwood*, 132 S. Ct. 665, 668 (2012); *see also Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 122 (2001) (recognizing the benefits of arbitration agreements in the employment context). In fact, the FAA establishes a "liberal policy of favoring arbitration agreements." *CompuCredit*, 132 S. Ct. at 669.

Courts consistently adhere to the strong federal policy favoring arbitration and arbitration agreements. *See, e.g., Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 26 (1991); *Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 940 (4th Cir. 1999). One of the primary sources and expressions of this federal policy is contained in the Federal Arbitration Act ("FAA") itself, 9 U.S.C. § 1, *et seq. See Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) ("The FAA reflects 'a liberal federal policy favoring arbitration agreements.'" (quoting *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983))). The Federal Arbitration Act (FAA) provides a federal district court with the authority to enforce an arbitration agreement by compelling the parties to arbitrate their dispute. 9 U.S.C. § 4.

Section 2 of the FAA states as follows:

> A written provision in any . . . contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction, or the refusal to perform the whole or any part thereof, or an agreement in writing to submit to arbitration an existing controversy arising out of a contract, transaction, or refusal, shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract.

9 U.S.C. § 2.

The provisions of the FAA are mandatory. Consequently, courts must stay a proceeding that is subject to arbitration and compel arbitration when a valid arbitration agreement exists. 9 U.S.C. §§ 3-4; *Adkins*, 303 F.3d at 500 ("The FAA requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.' 9 U.S.C. § 3. This stay-of-litigation provision is mandatory.").

The FAA requires Courts to compel the arbitration of any claims covered by an arbitration agreement. *See Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218 (1985) ("By its terms, the Act leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." (emphasis in original)); *see also Epic Systems*, 138 S.Ct. 1612, 1621 ("Indeed, we have often observed that the Arbitration Act requires courts 'rigorously' to 'enforce arbitration agreements according to their terms, including terms that specify *with whom* the parties choose to arbitrate their disputes and *the rules* under which that arbitration will be conducted.'") (quoting *American Express Co. v. Italian Colors Restaurant*, 570 U. S. 228, 233, 133 S. Ct. 2304, 186 L. Ed. 2d 417 (2013)).

Further evidencing the strong federal policy favoring arbitration and recognizing the FAA's legislative mandate, the Supreme Court has held that "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460

U.S. at 24-25; *see also Adkins*, 303 F.3d at 500 ("[Because] arbitration constitutes a more efficient dispute resolution process than litigation…'due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.'" (quoting *Volt Info. Sciences, Inc. v. Bd. of Tr. of Leland Stanford Junior Univ.*, 489 U.S. 468, 475-76 (1989))). Indeed, whether a matter is arbitrable "must be addressed with a healthy regard for the federal policy favoring arbitration." *Gilmer*, 500 U.S. at 26.

In the Fourth Circuit, a litigant can compel arbitration under the FAA if he/she can demonstrate "'(1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.'" *Adkins*, 303 F.3d at 500-01 (quoting *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991)).

### B.     No specific defenses can be asserted to defeat an arbitration agreement.

The Supreme Court has reaffirmed its continued deference to arbitration agreements by holding that the FAA makes agreements to arbitrate valid, irrevocable, and enforceable, save upon such grounds as exist in law or in equity for the revocation of any contract. *See Concepcion*, 563 U.S. at 343-52. Arbitration agreements are, therefore, on equal footing with all other contracts and must be enforced according to their terms. *Id*. The only defenses to an arbitration agreement are those that exist for any contract; no special defenses exist to an arbitration agreement. *Id*. In fact, even general contract provisions that would render null the FAA's favoritism of arbitration agreements cannot be applied to defeat arbitration. *Id*.

## IV.     LEGAL ARGUMENT

In analyzing this Motion, this Court must determine whether "an arbitration agreement exists between the parties" and "whether the dispute at issue falls within the scope of the agreement." *Hightower v. GMRI, Inc.*, 272 F.3d 239, 242 (4th Cir. 2001); *Glass v. Kidder Peabody & Co.*, 114 F.3d 446, 453 (4th Cir. 1997). Both of these elements are clearly present in this case.

### A.     Plaintiff's claims are subject to the mutually binding arbitration.

"The policy of the United States and South Carolina is to favor arbitration of disputes." *Wilson v. Willis*, 786 S.E.2d 571, 580 (S.C. Ct. App. 2016). Pursuant to the strong policy favoring arbitration, it is well-settled that any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration." *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 24-25; *see also Adkins*, 303 F.3d at 500 ("[D]ue regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration.") (citation omitted). Thus, a court should compel arbitration "unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute." *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960). Furthermore, when a mandatory arbitration provision is broadly drafted, only an "express provision excluding a particular [claim] from arbitration . . . [or] the most forceful evidence of a purpose to exclude the claim from arbitration" will remove such claim from consideration by an arbitrator. *AT&T Technologies, Inc. v. Commc'ns Workers of Am.*, 475 U.S. 643, 650 (1986).

All of the claims asserted by Plaintiff in this action are covered by the arbitration provision in the Employment Application signed by Plaintiff on April 12, 2016. Indeed, the language states that the parties "agree to resolve any and all claims, disputes or controversies arising out of or relating to your application for employment and application process exclusively by arbitration…"

(App., p. 3). Plaintiff's claims in this case challenge the use of an isokinetic strength test in conjunction with the pre-employment screening process, which clearly involves a "claim, dispute, or controversy arising out of or relating to [the]…application process" (App., p. 3). Plaintiff's claims under the Americans with Disabilities Act (ADA), the Rehabilitation Act of 1973, the South Carolina Human Affairs Law, Title VII of the Civil Rights Act of 1964, the Age Discrimination in Employment Act ("ADEA"), the Employment Retirement Income Security Act of 1974 ("ERISA"), and the public policy of the State of South Carolina are all tied to the validity of the pre-employment screening process of Defendant in association with Plaintiff's Application for employment and the pre-employment process (see Entry No. 1).

There is no doubt Plaintiff's claims are subject to arbitration. Even assuming there was doubt, that alone is insufficient to deny Defendant's Motion: "[T]he court may not deny a party's request to arbitrate an issue 'unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute.'" *Roberson v. Cliffs Cmtys., Inc*. No. 6:09-2701-HMH, 2010 U.S. Dist. LEXIS 68540 at *5-6 (D.S.C, July 8, 2010) (quoting *Peoples Sec. Life Ins. Co. v. Monumental Life Ins. Co.*, 867 F.2d 809, 812 (4th Cir. 1989)).

**B.     The arbitration process referred to in the Application is part of a contract or transaction involving interstate commerce and is valid under general contract principles.**

Because the claims between the parties are arbitrable, and the Application clearly evidences the intent to arbitrate them, the only question remaining is whether the arbitration provision in the Application is enforceable. Under the FAA, an arbitration agreement is enforceable if it is: (1) part of a contract or transaction involving interstate commerce; and, (2) valid under general principles of contract law. *See Adkins*, 303 F.3d at 500-01. As explained below, the Application satisfies both elements and, therefore, is enforceable under the FAA.

**1. There is a connection to interstate commerce.**

Courts broadly apply the interstate commerce requirement of the FAA and routinely hold that the FAA applies to arbitration agreements incidental to an employment relationship with a company operating in multiple states or otherwise engaged in interstate commerce. As one court in the Fourth Circuit recently summarized:

> The United States Supreme Court has held that the FAA's reference to interstate commerce reflects Congress' intent to extend the FAA's coverage to the limits of federal power under the Commerce Clause. *Allied-Bruce Terminix Comp., Inc. v. Dobson,* 513 U.S. 265, 277-81 (1995). The Court also recognized that the determination of whether a transaction or contract "involves" interstate commerce requires an expansive construction of the term in order to effectuate Congress' goal of encouraging alternative dispute resolution mechanisms. *Id.* at 274. Thus, a matter "involves" commerce under the FAA if it merely "affects" commerce – a standard commonly applied by the courts to situations in which it is clear that Congress intended to exercise its Commerce Clause powers to the fullest extent. *Id.* Accordingly, with the exception of agreements involving transportation workers, the FAA applies to all agreements to arbitrate employment disputes, provided the employment involves interstate commerce. *See Circuit City*, 532 U.S. at 120-22.

*Lesneski v. Ross Stores, Inc.*, No. 3:16-CV-00754-GCM, 2017 WL 2919014, at *2 (W.D.N.C. July 7, 2017); *see also Caley v. Gulfstream Aerospace Corp.*, 428 F.3d 1359, 1370 (11th Cir. 2005) (where an employer's "overall employment practices affect commerce, the Commerce Clause requirement is satisfied because "Congress' Commerce Clause power may be exercised in individual cases without showing any specific effect upon interstate commerce if in the aggregate the economic activity in question would represent a general practice subject to federal control" (citing *Citizens Bank v. Alafabco, Inc.*, 539 U.S. 52 (2003))). In *McElveen v. Mike Reichenbach Ford Lincoln, Inc.*, this Court held that an employee who works in an area of its employer's business that involves interstate commerce is equally involved in interstate commerce. No. CA

4:12-874-RBH-KDW, 2012 WL 3964973, at *2-3 (D.S.C. Aug. 22, 2012), *adopted*, 2012 WL 3965139 (D.S.C. Sept. 11, 2012).

Tidelands is a not-for-profit healthcare provider located in the coastal region of South Carolina, serving the Carolinas at four (4) hospitals and more than sixty (60) outpatient facilities in Georgetown and Horry Counties (Traver Decl., ¶ 2). Tidelands employs more than 2,500 employees and physicians whose focus is on promoting wellness, preventing illness, encouraging recovery, and restoring health (Traver Decl., ¶ 2). As a large, regional healthcare provider, Tidelands is able to leverage its size to purchase equipment and supplies for lower prices from vendors all over the Country (Traver Decl., ¶ 3). Similarly, Tidelands' patients have individual and/or group health benefit plans that require Tidelands to deal with insurance companies outside of the State of South Carolina on a daily basis (Traver Decl., ¶ 3). Tidelands recruits out-of-state applicants for strategic healthcare positions through advertising in various healthcare periodicals, with a circulation outside the State of South Carolina (Traver Decl., ¶ 5). Located as they are in a resort community, Tidelands frequently treats patients from outside the State who are only in the low country of South Carolina for a short period of time (Traver Decl., ¶ 4). Similarly, being close to the North Carolina state line, Tidelands has regular patients who are North Carolina residents (Traver Decl., ¶ 4). Thus, there can be little doubt that Plaintiff's employment bears more than a sufficient relationship to interstate commerce to satisfy the FAA.

### 2. The arbitration provision in the Application is enforceable under general contract law.

An arbitration agreement's validity is determined by reference to general principles of state contract law. *Doctor's Assocs. v . Casarotto*, 517 U.S. 681, 685 (1996) ("'[S]tate law, whether of legislative or judicial origin, is applicable *if* that law arose to govern issues concerning the validity, revocability, and enforceability of contracts generally.'" (quoting *Perry v. Thomas*, 482 U.S. 483,

493 n.9 (1987) (emphasis included))). However, to the extent state law carves out specific rules for arbitration agreements or other types of contracts that do not apply generally to all contracts, these rules are "inconsistent with, and . . . therefore preempted by, the federal law." *Id*. at 688. It is also well settled that an employer's agreement to arbitrate its claims against the employee—as Tidelands did here—is adequate consideration to support the employee's mutual promise. *See Adkins*, 303 F.3d at 501; *O'Neil v. Hilton Head Hosp.*, 115 F.3d 272 (4th Cir. 1997).

In South Carolina, formation of a valid contract requires "offer, acceptance, and valuable consideration." *Callan v. Singletary*, 2009 WL 2997001, *4 (D.S.C. Sept. 14, 2009) (citing *Carolina Amusement Co. v. Connecticut Nat'l Life Ins. Co.*, 437 S.E.2d 122, 125 (S.C. Ct. App. 1993)). Here, Tidelands offered dispute resolution procedures to Plaintiff by providing arbitration in connection with the application process. The Application provides that arbitration is the exclusive means for resolving all covered disputes, not the Court or other forums. Aside from accepting the arbitration provision by executing the Application on or about April 12, 2016, Plaintiff's acceptance is further demonstrated by her continuing to update her Application and asking to be considered for additional positions in 2019 and 2020 (see Traver Decl., ¶ 2). In addition, since both Plaintiff and Tidelands agreed to be bound by the arbitration provision, the agreement to arbitrate is supported by sufficient consideration. *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 501 (4th Cir. 2002) (finding arbitration agreement supported by consideration where both employee and employer agreed to be bound by arbitration process); *see also O'Neil*, 115 F.3d 272 ("A mutual promise to arbitrate constitutes sufficient consideration for this arbitration agreement" (citing *Rickborn v. Liberty Life Ins. Co.*, 468 S.E.2d 292, 300 (S.C. 1996))).

Plaintiff may argue that the arbitration provision at issue here is not enforceable because it was simply a provision in an Employment Application, not an executed contract. The holding in

*Circuit City Stores, Inc. v. Adams*, 532 U.S. 105, 121 S.Ct. 1302 (2001) should dispel that notion. In that case, as part of the process of applying for a job, Saint Clair Adams signed an <u>employment application</u> with the following language:

> I agree that I will settle any and all previously unasserted claims, disputes or controversies arising out of or relating to my application or candidacy for employment, employment and/or cessation of employment with Circuit City, *exclusively* by final and binding *arbitration* before a neutral Arbitrator. By way of example only, such claims include claims under federal, state, and local statutory or common law, such as the Age Discrimination in Employment Act, Title VII of the Civil Rights Act of 1964, as amended, including the amendments of the Civil Rights Act of 1991, the Americans with Disabilities Act, the law of contract and [the] law of tort." App. 13 (emphasis in original).

532 U.S. at 109-110. The fact that the agreement to arbitrate was contained in a provision of an employment application (instead of a more formalized contract) did not prevent the Supreme Court from enforcing the arbitration provision. <u>See</u> also *Adkins*, 303 F.3d at 499-500 (enforcing arbitration provision in policy signed by employee as a part of the job application process). Thus, wherever we find the agreement between the parties, if it is enforceable under state law, the arbitration provision <u>must</u> be enforced.

The Fourth Circuit enforces arbitration agreements in an employment context as long as: (1) the employee is not a transportation worker; (2) the agreement does not attempt to foreclose substantive rights; and, (3) there is no evidence that the arbitration would be prohibitively expensive to the employee. <u>See</u> *Adkins*, 303 F.3d at 502-05. Application of the forgoing factors in this case makes it clear that the arbitration provision in the Employment Application should be enforced with respect to Plaintiff's claim.

First, Plaintiff was not a transportation worker. She was applying for positions as an RN (<u>see</u> Entry No. 1, ¶ 125). Second, the arbitration provision in the Application permits Plaintiff to

raise any legal claims she could have in Court (Appl., p. 3). Third, there is no evidence that arbitration would be prohibitively expensive for Plaintiff. Finally, the arbitration provision is mutually binding, evidencing sufficient consideration to support it (App., p. 3).

In sum, the arbitration agreement between Plaintiff and Tidelands satisfies all of the requisite elements needed to be valid and enforceable under the FAA. Accordingly, the Court should stay litigation and compel Plaintiff's claims in accordance with the mandatory arbitration provision set forth in the Employment Application.

      **C.**      **Tidelands has not waived its right to arbitrate.**

Finally, a party may avoid arbitration by showing that the other party waived its right to arbitrate. *See Wilson*, 786 S.E.2d at 584 (placing the burden of proof of waiver of the right to arbitrate on the party opposing arbitration). "The party seeking to establish waiver has the burden of showing prejudice through an undue burden caused by a delay in the demand for arbitration." *Gen. Equip. & Supply Co., Inc. v. Keller Rigging & Constr., SC, Inc.*, 544 S.E.2d 643, 645 (S.C. Ct. App. 2001). Plaintiff cannot meet her burden of proving waiver in this case.

When determining whether a party has waived its right to compel arbitration, courts generally consider the following three factors: (1) whether a substantial length of time transpired between the commencement of the action and commencement of the motion to compel arbitration; (2) whether the party requesting arbitration engaged in extensive discovery before moving to compel arbitration; and (3) whether the non-moving party was prejudiced by the delay in seeking arbitration. *Rhodes v. Benson Chrysler-Plymouth, Inc.*, 647 S.E.2d 249, 251 (S.C. Ct. App. 2007). Tidelands clearly has not waived its right to arbitration as this Motion constitutes Tidelands' first appearance in this matter, and it has not otherwise responded to Plaintiff's Complaint. Further, no discovery has occurred, and Plaintiff will not be prejudiced by Tidelands' Motion seeking

arbitration. By seeking to compel arbitration shortly after Plaintiff initiated this action, and prior to answering the Complaint or conducting any discovery, Tidelands clearly has not waived its right to arbitration.

### D. The Court should alternatively dismiss Plaintiff's Complaint in its entirety.

Alternatively, Tidelands requests that the Court dismiss Plaintiff's Complaint, in its entirety. Where all of the issues presented in a lawsuit are arbitrable, dismissal of an action in order to pursue arbitration under an agreement between the parties is a proper remedy. *Choice Hotels Int'l, Inc. v. BSR Tropicana Resort, Inc.*, 252 F.3d 707, 709 (4th Cir. 2001); *see also York v. Dodgeland of Columbia, Inc.*, 749 S.E.2d 139, 154 (S.C. Ct. App. 2013) (finding the trial court did not err in dismissing Appellants' suit and compelling arbitration[]" when "[e]very dispute was within the scope of at least one valid arbitration agreement"); *Greenway Energy, LLC v. Ardica Techs., Inc.*, No. 1:17-cv-819-RMG, 2017 WL 2210254, at *2 (D.S.C. May 17, 2017) (compelling arbitration and "dismiss[ing] the complaint without prejudice under Rule 12(b)(3) of the Federal Rules of Civil Procedure" "where the entire dispute is within the scope of the arbitration clause"); *Church v. Hotels.com L.P.*, No. 2:18-0018-RMG, 2018 WL 3130615, at *3 (D.S.C. June 26, 2018) (same); *Thomas v. Santander Consumer USA Inc.*, No. 0:15-cv-04980-CMC-PJG, 2016 WL 5956279, at *4 (D.S.C. Oct. 14, 2016) ("Dismissal is appropriate when, as here, all claims fall within the scope of an enforceable arbitration provision"); *Carmichael v. Hilton Head Island Dev. Co., LLC*, No. 9:16-cv-1641-PMD, 2016 WL 4527194, at *4 (D.S.C. Aug. 30, 2016) ("the proper course of action is to dismiss the case" when all claims are arbitrable). Accordingly, this Court may dismiss Plaintiff's claims in their entirety rather than staying the litigation.

## V.  PLAINTIFF HAS WAIVED HER RIGHT TO ASSERT ANY CLASS CLAIMS AND THOSE CLAIMS SHOULD BE DISMISSED

Pursuant to the Supreme Court's recent decision in *Epic Systems*, the class and collective action waiver in the arbitration provision is clearly enforceable, and Plaintiff is unquestionably required to arbitrate her claims on an individual basis. *See Epic Systems Corp. v. Lewis*, 584 U.S. __, 138 S. Ct. 1612, 200 L.E. 2d 889 (2018).

*Epic Systems* concerned three consolidated FLSA cases[3] involving employment agreements requiring individual arbitration. *Id.* There, the plaintiffs sought to litigate FLSA (and related state law claims) through class or collective actions in federal court despite entering into agreements mandating individualized arbitration proceedings to resolve employment disputes. *See* 138 S. Ct. at 1616. The Supreme Court rejected the employees' argument that such agreements are unenforceable in violation of the National Labor Relations Act. *Id.* at 1628-29 ("Nothing in our cases indicates that the NLRA guarantees class and collective action procedures, let alone for claims arising under different statutes and despite the express (and entirely unmentioned) teachings of the Arbitration Act."). Moreover, the Court reversed the Seventh Circuit's denial of defendant's motion to compel arbitration and held that agreements to arbitrate employment disputes that require arbitration proceedings to be conducted on an individual basis are enforceable. *Id.* at 1632.

As a result of this decision, Plaintiff's agreement to resolve her claims against Tidelands through an individual arbitration process, without any class claims or relief, is enforceable. Any contentions to the contrary were dispelled in *Epic Systems*. As such, Plaintiff must be compelled to individual arbitration.

---

[3] *Lewis v. Epic Systems Corp.*, 823 F.3d 1147 (7th Cir. 2016); *Ernst & Young LLP v. Morris*, No. 13-16599 (9th Cir. 2016); *Murphy Oil USA, Inc. v. NLRB*, 808 F.3d 1013 (5th Cir. 2015).

-17-

## VI.  CONCLUSION

Plaintiff commenced this action rather than pursuing her claims through the mandatory and binding arbitration provision contained in her Employment Application (which Plaintiff conveniently failed to even reference in her Complaint).  As set forth above, the arbitration provision is binding and enforceable under well-established authority that favors the submission of disputes to alternative dispute resolution (including binding arbitration). Tidelands requests nothing more than enforcement of the arbitration agreement between the parties, as Plaintiff's pursuit of this litigation directly contradicts the clear understanding of the parties.  Pursuant to Sections 3 and 4 of the FAA, Tidelands respectfully requests that the Court grant this Motion, stay all litigation relating to Plaintiff's claims, and compel Plaintiff to comply with the arbitration provision in the Employment Application.  Alternatively, Tidelands requests that the Court dismiss the Complaint, in its entirety, as all of Plaintiff's claims are subject to mandatory arbitration under the Application.

Defendant also requests that the Court enforce the class waiver provision of the arbitration clause contained in the Employment Application, dismiss Plaintiff's class claims, and require Plaintiff to arbitrate her claims on an individual basis.

Dated this 16th day of September, 2021.

        Respectfully submitted,

        OGLETREE, DEAKINS, NASH,
         SMOAK & STEWART, P.C.

By:   /s/ Thomas A. Bright
       Thomas A. Bright (Fed. ID 1476)
       300 North Main Street, Suite 500
       Greenville, South Carolina 29601
       Phone: (864) 271-1300
       Fax: (864) 235-8806
       thomas.bright@ogletree.com

        Attorneys for Defendant